**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

In the Matter of the Tax Indebtedness
of FRANCIS A. And MARY JOAN BLAKE,

CASE NO. 07-50942

HON. MARIANNE O. BATTANI

_____/

**ORDER GRANTING RESPONDENTS' OBJECTIONS TO PETITION FOR
JUDICIAL APPROVAL OF LEVY UPON PRINCIPAL RESIDENCE**

Now before the Court is Respondents' Objections to Petition for Judicial Approval of Levy upon Principal Residence (Doc. No. 6), Respondents' Motion to Compel Production of Documents (Doc. No. 10), and Respondents' Motion for Reconsideration to Exclude Petitioner's Evidence (Doc. No. 16). For the reasons that follow, the Court **GRANTS** Respondents' objections and **DENIES** Respondents' motion to compel and motion for reconsideration as moot.

**I. PROCEDURAL BACKGROUND**

Petitioner United States of America initiated a proceeding to obtain judicial approval of a levy on a principal residence owned by Respondents, Francis A. and Mary Joan Blake. The Internal Revenue Service ("IRS") seeks to levy property owned by Respondents, located at 17 Dodge Place, Grosse Pointe, Michigan. See 26 U.S.C. § 6334(e)(1).

According to the Declaration offered in support of the Petition for Judicial Approval of Levy on Principal Resident, Respondents are indebted to the United States in the amount of $1,417,511.51, as of June 1, 2007. In the Declaration in Support of Petition,

Toni Allen, the Revenue Officer assigned to collet the unpaid federal income tax liabilities, averred the amount of the unpaid taxes, penalties, and interest, that the taxpayers failed to pay despite notice and demand, that the Internal Revenue Service followed the requirements of applicable law and administrative procedures relevant to a levy upon the property, and that no reasonable alternative exists to satisfy the unpaid tax liabilities. The Tax Code grants taxpayers the right to a hearing on a notice of levy, and here, Respondents filed an objection so the Court set the matter for a hearing.

The parties appeared for a hearing, and at the hearing, Respondents conceded that the Government complied with the procedural notification requirements and did not dispute efforts to secure payment from other assets were made. At the conclusion of the hearing, the Court determined that the Government met its burden to show that the "underlying liability had not been satisfied," that the IRS complied with the applicable administrative procedures relevant to the levy, and that "no reasonable alternative for collection of the taxpayers' debt" existed. 26 C.F.R. § 301.6334-1(d)(1). In sum, the Court found that the IRS had met the requirements to levy.

Respondents requested the opportunity to further brief their argument that under 26 U.S.C. § 6331(f), the Court should deny the levy as uneconomical. The Court granted them leave to file an additional brief supporting their position that pursuant to Section 6331(f), the IRS could not levy on property where the value of the property did not exceed the encumbrances. In addition to the supplemental pleading, Respondents filed a motion to compel discovery and a request for reconsideration.

## II. STANDARD OF REVIEW

Taxpayers whose residences are subject to a § 6334(e)(1) proceedings are entitled to a hearing. Although the statute does not address the type of hearing that is required or the standard of review to be applied, courts have reviewed petitions for approval of a levy under the statute on a similar basis as a summons enforcement action. See e.g. United States v. Pragasam, No. 06-56691, 2007 WL 1103748 at * 17 (9th Cir. March 5, 2007). Therefore, the Government must make a prima facie showing that is has followed the administrative requirements. The taxpayer bears the burden of disproving the prima facie case.

## III. ANALYSIS

When Congress enacted the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub.L. 105-206, sec. 3401, 112 Stat. 685, 746, it added due process protections for taxpayers in tax collection matters. Relevant to the dispute, is the section that provides that the district courts have exclusive jurisdiction to approve a levy on a principal residence. 26 U.S.C. §6334(e)(1)(B).

According to Respondents, the levy on their residence constitutes an "uneconomical levy," in violation of § 6331(f), which prohibits a levy in which the processing expenses will exceed the value of the property seized. Section 6331(f) reads: "No levy may be made on any property if the amount of the expenses which the Secretary estimates (at the time of the levy) would be incurred by the Secretary with respect to the levy and sale of such property exceeds the fair market value of such property at the time of levy." 26 U.S.C. § 6331(f). At the hearing, the parties contested whether § 6331(f)

requires consideration of encumbrances.

Neither the Treasury Regulations nor case law supports Respondents' contention that it does. According to the accompanying regulation, the expenses include those incurred in the "protection and preservation of the property during the period subsequent to the levy, as well as the actual expenses incurred in connection with the sale thereof." 26 C.F.R. § 301.6331-2. Accord Fishburn v. Brown, No.1:95-CV-1332 1995 WL 644214 (N.D. Ohio Aug. 9, 1995), aff'd on other grounds, 125 F.3d 979 (Fed. Cir. 1997) (rejecting the plaintiff's challenge to the IRS seizure of her vehicle). In Fishburn, the plaintiff unsuccessfully advanced a similar argument, contending that the seizure of her vehicle was an uneconomical levy under § 6331(f), because the IRS did not consider preexisting liens on the vehicle in determining the fair market value. In sum, an uneconomical levy is defined explicitly as one in which the expenses incurred by the IRS in conducting a levy and sale of property exceed the fair market value of the property sold or exceed the underlying tax liability. Respondents have not met their burden to show that the levy violates the statute. The calculation is far more narrow than that proposed by Respondents. Accordingly, the objection on this basis fails.

In their posthearing brief, Respondents refined their position, arguing that the levy is barred by 26 U.S.C. § 6331(j).[1] Petitioner objects to consideration of the argument on

---

[1]Section 6631 (j), entitled "No Levy Before Investigation of Status of Property," provides:

> (1) In General. For purposes of applying the provision of this subchapter, no levy may be made on any property or right to property which is to be sold under section 6335 until a thorough investigation of the status of property has been completed.

4

the merits as exceeding the scope of the Court's permission. This Court rejects that characterization. Respondents did cite this provision at the hearing, despite their failure to advance a detailed objection to the levy under this statutory provision. See Tr. at 26. They repeatedly argued that consideration must be given to whether post sale, the remaining equity would be sufficient to pay on the tax liability. In this case, Respondents do not raise an entirely new argument, and the Court turns its attention to the merits of their position.

Under § 6331(j)(1), Petitioner must complete "a thorough investigation of the status of property" before petitioning for levy. Part of the investigation is a "determination that the equity in [the] property is sufficient to yield net proceeds to apply to" the tax liability. 26 U.S.C. § 6331(j)(2)(C). This is precisely the point Respondents argued at the hearing albeit under the umbrella of the uneconomical levy provision. In making their claim that the equity in the property will not yield net proceeds to be applied to their tax liability, Respondents raise several challenges, including Petitioner's failure to adhere to the

---

    (2) Elements in Investigation. For purposes of paragraph (1), an investigation of the status of any property shall include-

      (A) a verification of the taxpayer's liability;

      (B) the completion of an analysis under subsection (f);

      (C) determination that the equity in such property is sufficient to yield net proceeds from the sale of such property to apply to such liability; and

      (D) a thorough consideration of alternative collection methods.

26 U.S.C. § 6331 (j).

Internal Revenue Service Manual ("IRSM" or Manual), and the method by which the Government valued the property and the timing of the appraisal. The Court addresses each ground below.

**A. IRSM**

The Manual echoes the statutory requirement. Specifically, Section 5.10.1.3 of the IRSM, entitled "Actions Required Prior to Seizure by IRC 6631(j)," requires in part a "determination that the equity is sufficient to yield net proceeds from the sale to apply to the liability." In addition, under Section 5.10.1.3.3.1(12),

> The draft minimum bid should be prepared based on the input received from the PALS for both the FMV and the expenses of sale, then there should be expected net proceeds to apply to the liability. If no net proceeds are expected based on the minimum bid calculation, the revenue officer cannot recommend the case for seizure. Either the case history or a fact sheet submitted with the approval request must contain:
>
> • Records that were checked
> • Results of the research
> • FMV calculation
> • Encumbrances that were located and the balances due
> • Estimated expenses of sale.

Respondents challenge whether the Government's witness established compliance with these Manual requirements.

At the outset, the Court observes that Respondents' reliance on criteria listed in the IRSM is misplaced. The Manual lacks the force of law, confers no rights on taxpayers, and is not binding on the IRS in litigation with taxpayers. United States v. Will, 671 F.2d 963, 967 (6th Cir. 1982). Accord Fargo v. C.I.R., 447 F.3d 706 (9th Cir. 2006); Qureshi v. U.S., 96 A.F.T.R.2d 2005-5949 (Fed. Cl. 2005); Carlson v. United States, 126 F.3d 915, 922 (7th Cir. 1997); Groder v. United States, 816 F.2d 139, 142 (4th Cir. 1987); United

6

States v. Horne, 714 F.2d 206, 207 (1st Cir. 1983). Consequently, the Court directs its attention to whether Respondents' other arguments support their position that Petitioner failed to comply with applicable administrative procedures.

**B. Appraisal Method/Timing**

To rebut Respondents' contention that Petitioner failed to comply with applicable laws and administrative procedures, Petitioner points to the testimony of the IRS Revenue Officer. At the hearing, Allen testified that the IRS had followed all required procedures; that an IRS evaluation placed the value of the subject property at over $1.2 million, and that the estimated cost of seizure and sale of the property would be approximately $1,200. On cross-examination, she affirmed that the required risk analysis was done. Finally, Exhibit A, page 6 of the ICS History Transcript, which was used at the hearing, shows the federal tax lien amounts, the minimum bid price, encumbrances, and expected expenses of the sale. This minimum bid worksheet shows that the IRS conducted an analysis of the equity in the property as required by Section 6331(j).

Although Petitioner established its prima facie case, the testimony at the hearing provided a basis for Respondents to disprove the Government's case. Specifically, Allen could not testify as to how the fair market value of the residence was reached. She did not know whether the individual who prepared the valuation took comparables into account. Tr. at 19. Further, she admitted that the report in which the risk analysis appears was dated February 12, 2001.

Respondents challenged these shortcomings with a current appraisal of the property. In contrast to Petitioner's valuation of the property--$1,269,600, Respondents

offered an appraisal valuing the property at $730,000. Respondents' Ex. A. Respondents' appraisal takes into account the sale prices of comparable properties whereas Petitioner merely doubled the 2003 State Equalized Value to assess the value of the property.

Even if the method employed by Petitioner to assess the fair market value of the property is less thorough than the method employed by Respondents, a dispute as to the method does not satisfy Respondents' burden.[2] After the hearing, Petitioner did provide some additional pages of the ICS History Transcript to Respondents' counsel, which list the encumbrances and includes the opinion that the property at issue would not lose value because of its location "in an exclusive area." See Petitioner's Ex. B. Allen's testimony in conjunction with this documentation typically would provide a sufficient basis for the petition, given the "historically broad discretion in tax collection proceedings." Living Care Alternative of Utica, Inc. v. United States, 411 F.3d 621, 629 (6th Cir. 2005). After the hearing, Petitioner did provide some additional pages of the ICS History Transcript to Respondents' counsel, which list encumbrances and includes the opinion that the property would not lose value because of its location "in an exclusive area." See Petitioner's Ex. B. Allen's testimony in conjunction with this documentation typically would provide a sufficient basis for the petition, given the "historically broad discretion in tax collection

---

[2]The ICS History Transcript shows that in calculating a minimum bid price, the property value, which was assessed at $1,269,600, is reduced by 10% to reach a forced sale value. That value is then reduced by 20% for a reduced forced sale value. Finally, the encumbrances are subtracted to reach a minimum bid price. See ICS History Transcript. Petitioner calculated the minimum bid price at $273,252.66. Applying the same calculations to the property value advanced by Respondents supports their contention that no equity will remain to be applied to their tax liability.

8

proceedings." Living Care Alternative of Utica, Inc. v. United States, 411 F.3d 621, 629 (6th Cir. 2005).

Nevertheless, Allen's testimony that all proper procedures and applicable laws were followed is undermined by the questions she could not answer as well as Petitioner's stance at the hearing that it merely had to comply with § 6331(f). That position is untenable in light of the plain language of § 6331(j). In reaching this conclusion, the Court makes clear that a respondent's disagreement with the minimum bid worksheet, standing alone, provides no basis for barring an order to levy. Such a characterization does not reflect the situation before this Court. Here, Respondents maintain that the History Transcript is seriously flawed and an incomplete document. This Court agrees. Even more problematic is the age of the document. Allen admitted at the hearing that the report in which the risk analysis appears is dated February 12, 2001. The outdated calculation of fair market value when considered in light of the vast disparity in the 2007 appraisal offered by Respondents and the 2001 valuation by Petitioner convince the Court that it must reconsider the conclusion it reached after the hearing. In addition, the Court is troubled by Petitioner's adherence to its position that it merely had to comply with § 6331(f), an argument contrary to the plain language of the IRS Code.

Although § 6331(j) does not contain a time requirement, the evidence advanced by Petitioner in support of the fair market value of the property is insufficient. The Court recognized at the hearing that property values have not remained constant or increased since the property was appraised in 2001. Any reasonably well-informed resident of Michigan would recognize that an appraisal as old as that offered by and relied upon by

9

Petitioner must overvalue the property. Nevertheless, Petitioner failed to present any evidence that the fair market value was updated after 2003 or that it accurately represented the property at the time the petition was filed. This simply cannot be the kind of investigation Congress had in mind when it enacted § 6331(j), and this Court finds Petitioner's evidence abjectly fails to demonstrate that the levy complies with § 6331(j).

## IV. CONCLUSION

Respondents asked for and were given leave to brief the applicable law and administrative procedures and to provide evidence that the value of the subject property would not exceed the encumbrances and expenses of the sale. They have succeeded in demonstrating that Petitioner did not follow the requirements of § 6331(j)(2)(C). In light of the Court's determination, Respondents' Motion to Compel Production of Documents[3] is **DENIED**.

Finally, in their Motion for Reconsideration, Respondents ask the Court to exclude Petitioner's evidence offered in support of the fair market value of the principal residence on the ground that its probative value is substantially outweighed by the danger of unfair prejudice in violation of FED. R. EVID. 403. In light of the Court's opinion, the motion likewise is **DENIED** as moot.

Accordingly, the Court **GRANTS** Respondents' objections**.** The Petition for

---

[3]Pursuant to FED. R. CIV. P. 26(b)(1), FED. R. CIV. P. 37(a)(1); 37 (a)(3)(B), and 37 (a)(3)(B)(iv), Respondents ask for the entire ICS History Transcript rather than a redacted document as well as "all correspondence, memoranda or other communications in any and all formats, i.e., electronic, audio recordings, etc, with regard to the preparation fo the ICS History Transcript and with regard to the request for a levy to seize the Respondents' personal residence. See Doc. No. 10.

Approval of Levy Upon Principal Residence is **DENIED.**

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date:   December 16, 2008

**CERTIFICATE OF SERVICE**

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

s/Bernadette M. Thebolt
Deputy Clerk

11